[Cite as *Academy Ridge v. Gahanna*, 2024-Ohio-2699.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The Academy Ridge Community Association, Inc. et al., | : | |
| | : | |
| Plaintiffs-Appellants, | : | |
| | : | No. 23AP-440 |
| v. | | (C.P.C. No. 23CV-2273) |
| | : | |
| City of Gahanna et al., | : | (REGULAR CALENDAR) |
| | : | |
| Defendants-Appellees. | : | |
| | : | |

D E C I S I O N

Rendered on July 16, 2024

**On brief:** *Williams & Strohm, LLC*, and *Jesse M. Kanitz*, for appellant Academy Ridge Community Association, Inc. and Jane F. Peck. **Argued:** *Jesse M. Kanitz*.

**On brief:** *Issac Wiles & Burkholder, LLC*, *Aaron M. Glasgow*, and *Mark Landes*, for appellee City of Gahanna. **Argued:** *Aaron M. Glasgow*.

**On brief:** *Vorys, Sater, Seymour and Pease LLP*, *John M. Kuhl*, *Danielle S. Rice*, and *Emily J. Taft*, for appellee Academy Development LP.

APPEAL from the Franklin County Court of Common Pleas

BOGGS, J.

{¶ 1} Plaintiffs-appellants, The Academy Ridge Community Association, Inc. and Jane F. Peck (jointly "Academy Ridge"), appeal the judgment of the Franklin County Court of Common Pleas in favor of defendants-appellees, the City of Gahanna ("the City") and Academy Development LP (Academy Development), on their motion for judgment on the pleadings. For the reasons herein, we affirm the trial court's judgment.

## I.   FACTS AND PROCEDURAL BACKGROUND

{¶ 2}   On April 3, 2023, Academy Ridge filed a complaint for declaratory and injunctive relief seeking to halt development of a 5.19 acre parcel of land located on North Hamilton Road in Gahanna, Ohio (hereinafter "the Property"), which is owned by defendant-appellee, Academy Development.  Academy Ridge, as stated in its complaint, is a not-for-profit corporation that governs and manages lots in the Academy Ridge subdivision, which is adjacent to the Property. Jane F. Peck is a member of Academy Ridge's Board and owns property within the Academy Ridge subdivision that is contiguous to the Property.

{¶ 3}   In 2017, Academy Development submitted a variance application for its planned development of the Property to the City's Planning Commission. While the variance application was approved by the Planning Commission, it was later denied by the City's Board of Zoning and Building Appeals.  In 2019, Academy Development submitted another proposal to develop the Property for a medical emergency facility, which was again approved by the Planning Commission but later denied by the Board of Zoning and Building Appeals in 2020, despite an existing medical facility located across the street from the Property and in the same zoning category.  Academy Ridge argued against both variance applications before the Commission and the Board.  (Apr. 3, 2023 Compl. at 2-9.)

{¶ 4}   Academy Development appealed the Board's decision denying its 2019 application for a variance to the Franklin County Environmental Court and, in those proceedings, Academy Development threatened to sue the City in federal court for what it argued was the arbitrary denial of its application under 42 U.S.C. § 1983.  Gahanna's City Attorney, Ray Mularski, and Academy Development then negotiated and executed a settlement agreement in May 2022 that would allow development of the Property to move forward while avoiding possible litigation in federal court.

{¶ 5}   In March 2023, Academy Development began clearing trees on the Property that were between the Academy Ridge subdivision and North Hamilton Road.  On March 13, 2023, residents in the Academy Ridge subdivision received a letter from Mr. Mularksi, informing them of the settlement agreement between Academy Development and the City and that the Property was going to be developed as a shopping center, as approved in 2018 by the Commission, with some modifications for an environmental

boundary, protections against light and noise impacts, and installation of signage to direct traffic away from the Academy Ridge subdivision.

{¶ 6}   On April 3, 2023, Academy Ridge filed a complaint under R.C. 5312.06(D)(2) and 733.59, seeking declaratory and injunctive relief to stop the City and Academy Development from proceeding with the development of the Property.  Academy Ridge argued that the development was in violation of local, state, and federal law in a way that caused irreparable harm to them.  (Compl. at 2.)  They also argued that the settlement agreement was made in bad faith and was reached through the violation of the due process and procedural rights of Academy Ridge and the citizens of Gahanna.  *Id.*  The complaint alleges that "large swaths" of trees were being removed from the property and "[u]pon information and belief, there are plans to remove up to four acres of trees from the Property." *Id.* at 11.  Academy Ridge also argued that the settlement agreement was done as "a means to allow Academy Development to circumvent the generally applicable zoning procedures adopted by the City, to prevent public involvement in the process, and to allow development of the Property to be approved outside of an open and public meeting by the appropriate independent body vested with such authority by law." *Id.* at 14.

{¶ 7}   On May 6, 2023, the City filed a motion for judgment on the pleadings.  The City argued that Academy Ridge did not have standing to sue under R.C. 733.59 because they are suing to enforce a private interest, rather than a public right.  The City also argued that the City Attorney, per the City of Gahanna Charter, had authority to settle litigation on behalf of the City and that the decision to settle was made in good faith.  (May 6, 2023 Mot. for Jgmt. on the Pleadings at 1.)

{¶ 8}   In response to the City's motion, Academy Ridge argued that the City Attorney did not have unilateral authority to approve the settlement on behalf of the City, that the settlement agreement violated multiple provisions of the Gahanna City Charter and Code and therefore cannot bind the City, and that they have sufficiently pled a public interest to "restrain the misapplication of municipal funds, the abuse of municipal powers, or the performance of a municipal contract in violation of the municipality's laws or ordinances." *Deluca v. Aurora*, 144 Ohio App.3d 501, ¶ 44 (8th Dist.2001).

{¶ 9}   On June 21, 2023, the Franklin County Court of Common Pleas issued a decision and order granting the City's motion for judgment on the pleadings.  The trial court

found that the City Attorney had the authority to enter into a binding settlement with Academy Development without approval of the Mayor or Gahanna City Council. (June 21, 2023 Decision & Order at 4.) The trial court reasoned that Section 10.03 of the Gahanna City Charter provided to the City Attorney authority "to prosecute or defend for and on behalf of the City, all complaints, suits and controversies in which the City is a party," including the authority to enter into a settlement under *Rabiner v. City Planning Comm.*, 1st Dist. No. C-960643, 1997 Ohio App. LEXIS 877 (Mar. 12, 1997). The court also found that no ordinance or city charter provision prohibited the City Attorney to settle cases or controversies and that, following the settlement, the City Council had taken no action to repudiate or annul the settlement.

{¶ 10} The trial court also found that the plaintiffs lacked standing under R.C. 733.59—an independent reason to dismiss the case. The trial court reasoned that, under *State ex rel. Academy of Trial Lawyers v. Sheward*, 86 Ohio St.3d 451, 471 (1999), plaintiffs in taxpayer cases must establish that the injury to the public is serious and that the plaintiffs' case "involve[s] no rights or obligations peculiar to the named parties." The trial court stated that, under *State ex rel. Teamsters Local Union No. 436 v. Bd. of Cty. Commrs.*, 132 Ohio St.3d 47, 2012-Ohio-1861, and *State ex rel. Brewer-Garret Co. v. MetroHealth Sys.*, 8th Dist. No. 87365, 2006-Ohio-5244, ¶ 47, courts can examine the "motivations" behind an alleged taxpayer's action and that, here, the complaint and attachments established that the plaintiffs' motivation was to protect the value of their own residential properties and the aesthetic value of having trees, instead of a new development, abutting their properties. (Decision & Order at 7.) The trial court found only conclusory language, with "absolutely no specific facts" to support the allegations, regarding how the public at large would suffer serious injury from the development. *Id.*

{¶ 11} Finally, the trial court rejected Academy Ridge's argument that the settlement was not made in good faith. The trial court looked to Mularski's letter to the residents of the Academy Ridge subdivision that stated his reasoning for settling, mainly that the City "was placed in the untenable position of having to defend an indefensible lawsuit." *Id.* at 8. The trial court found these "were legitimate legal concerns completely within [the City Attorney's] purview in defending the case and the threatened federal litigation." *Id.* at 9.

{¶ 12} On July 19, 2021, Academy Ridge filed an appeal with this court.

## II. ASSIGNMENTS OF ERROR

{¶ 13} Academy Ridge argues the following assignments of error:

> I. The trial court erred when it determined the appellants lacked taxpayer standing.
>
> II. The city attorney lacks authority to unilaterally bind Gahanna to settlement agreements concerning all municipal matters and that conflict with the code.
>
> III. The city agreed to the settlement in bad faith.

## III. LEGAL ANALYSIS

{¶ 14} We review a trial court's grant of judgment on the pleadings de novo. *Martin v. McKnight*, 10th Dist. No. 08AP-633, 2008-Ohio-6914, ¶ 7. "A motion for judgment on the pleadings is to be granted when, after viewing the allegations and reasonable inferences therefrom in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." *Id.*

{¶ 15} Before a court may consider the merits of a legal claim, "the person or entity seeking relief must establish standing to sue." *Ohio Pyro, Inc. v. Ohio Dept. of Commerce*, 115 Ohio St.3d 375, 2007-Ohio-5024, ¶ 27. Whether appellants have established standing is a question of law, which we review de novo. *See Moore v. City of Middletown*, 133 Ohio St.3d 55, 2012-Ohio-3897, ¶ 20, citing *Cuyahoga Cty. Bd. of Commrs. v. State*, 112 Ohio St.3d 59, 2006-Ohio-6499, ¶ 23. The Supreme Court of Ohio has noted that standing may be conferred by statute. *Middletown v. Ferguson*, 25 Ohio St.3d 71, 75 (1986).

{¶ 16} Academy Ridge argues they have standing under R.C. 733.59 which states:

> If the village solicitor or city director of law fails, upon the written request of any taxpayer of the municipal corporation, to make any application provided for in sections 733.56 to 733.58 of the Revised Code, the taxpayer may institute suit in his own name, on behalf of the municipal corporation. Any taxpayer of any municipal corporation in which there is no village solicitor or city director of law may bring such suit on behalf of the municipal corporation. No such suit or proceeding shall be entertained by any court until the taxpayer gives security for the cost of the proceeding.

{¶ 17}   The Supreme Court has defined "taxpayer" under R.C. Chapter 733 as "any person who, in a private capacity as a citizen elector, freeholder or taxpayer, volunteers to enforce a right of action *on behalf of and for the benefit of the public*[.]" (Emphasis added.) *State ex rel. Nimon v. Springdale*, 6 Ohio St.2d 1 (1966), paragraph two of the syllabus. "[T]o maintain such an action under R.C. 733.59, the taxpayer's aim must be to enforce a public right, regardless of any personal or private motive of advantage.  Appellants' action to compel fringe benefits for their own benefit does not represent such an aim." *State ex rel. Caspar v. Dayton*, 53 Ohio St.3d 16, 20 (1990).

{¶ 18}   The Supreme Court has held that only "when the issues sought to be litigated are of great importance and interest to the public [may they] be resolved in a form of action that involves no rights or obligations peculiar to named parties." *State ex rel. Academy of Trial Lawyers*, 86 Ohio St.3d at 471.  In contrast, "when a remedy being pursued is one that is merely for the individual taxpayer's benefit, the taxpayer cannot claim that he is vindicating a public right, and he will not have standing to pursue a taxpayer action." *State ex rel. Teamsters Local Union No. 436*, 2012-Ohio-1861 at ¶ 12, citing *Caspar* at ¶ 20.

{¶ 19}   We find the Twelfth District Court of Appeals' analysis in *Home Builders Assn. of Dayton v. Lebanon*, 167 Ohio App.3d 247, 2006-Ohio-595 (12th Dist.), instructive in determining whether the taxpayer is seeking to protect public rights or whether the aim of the suit was merely for their own benefit.

> Courts have found taxpayer standing in numerous cases in which the taxpayer's aim was the enforcement of a public right. See Nimon, 6 Ohio St.2d 1,  4-5, 215 N.E.2d 592 (taxpayer sued city to compel certification of referendum petition); State ex rel. White v. City of Cleveland (1973), 34 Ohio St.2d 37, 40, 295 N.E.2d 665 (taxpayer sued city for right to make copies of public records); State ex rel. Cater v. City of N. Olmsted, 69 Ohio St.3d 315, 323, 1994 Ohio 488, 631 N.E.2d 1048 (taxpayer sued city to enforce public's right to services of city official); State ex rel. Ohio Academy of Trial Lawyers v. Sheward, 86 Ohio St. 3d 451, 474, 1999 Ohio 123, 715 N.E.2d 1062 (taxpayers sued to challenge on separation of powers grounds the enactment of "tort reform" legislation).
>
> Courts have not found taxpayer standing in cases in which the aim of the suit was merely the taxpayer's own benefit, and not the benefit of the public at large. See Caspar, 53 Ohio St.3d at 20 (police officers sued city for right to vacation pay and fringe benefits based on alleged violation of collective bargaining

agreement); O'Malley, 2002 Ohio 3633, at P47 (electricians' union sued city to enjoin hiring of non-electricians for certain work); Assn. of Cleveland Firefighters, Local 93 v. City of Cleveland, 156 Ohio App. 3d 368, 2004 Ohio 994, P16, 806 N.E.2d 170 (firefighters' union sued city to compel wage differentiation between different ranks of officers as incentive for qualified individuals to seek higher rank); City of Cincinnati ex rel. Radford v. City of Cincinnati, Hamilton App. No. C-030749, 2004 Ohio 3501, P13 (trustees of municipal employees' retirement system sued city to compel transfer of certain funds to retirement system).

*Home Builders Assn. of Dayton* at ¶ 51-52.

{¶ 20} In *Home Builders Assn. of Dayton*, the court found that, while "there was some general benefit to the public in preventing the city from enforcing an unconstitutional ordinance * * * the interests pursued by the homebuilders were primarily related to a narrow class of citizen/taxpayers." *Id.* at ¶ 54. Similarly, the Eighth District Court of Appeals found that "[w]hen a union or its members seek to vindicate their rights or the rights of other union members, the benefit sought to be conferred is private, and a taxpayer's suit will not be recognized. Without a more significant public interest at stake, the attempt to gain standing under R.C. 733.59 appears to be a pretext for the assertion of a private cause of action. The enforcement of private rights often confers a public benefit, but the ability to contemplate a public benefit does not translate every private action against a municipality into a taxpayer's suit under R.C. 733.59." *Assn. of Cleveland Fire Fighters, Local 93 v. Cleveland*, 156 Ohio App.3d 368, 2004-Ohio-994, ¶ 16-17 (8th Dist.).

{¶ 21} Here, we agree with the trial court that "[t]he issues raised by Plaintiffs are issues peculiar to and of interest only to them" and that this action has not been brought for the benefit of the public. (Decision & Order at 7.) While the complaint alleges the violation of due process and procedural rights, this appears to be a pretext for the Academy Ridge subdivision residents' private rights and concerns, as contiguous property owners to the Property. This is evident in the complaint by Academy Ridge's objections to the removal of "large swaths of trees" and "plans to remove up to four acres of trees from the Property" and the allegations that Academy Ridge had contacted the City after the tagging of and removal of some trees because they believe that "irreparable damage is currently being done." (Compl. at 11-12).

{¶ 22} The complaint also catalogues Academy Ridge's history of opposition to the development of the Property, first as a shopping center and then later as a medical emergency facility. *Id.* at 4, 8. We note that Ohio courts have rejected arguments that individual interests in property values is a public right or benefit to confer taxpayer standing under R.C. 733.59. *See State ex rel. Phillips Supply Co. v. Cincinnati*, 1st Dist. No. C-120168, 2012-Ohio-6096, ¶ 21 and S*tate ex rel. Karwowski v. Granger Twp. Trustees*, 9th Dist. No. 08CA0017-M, 2008-Ohio-4946, ¶ 28-30.

{¶ 23} We therefore find that Academy Ridge does not have taxpayer standing under R.C. 733.59 and overrule Academy Ridge's first assignment of error. Because we have determined that appellants do not have taxpayer standing under R.C. 733.59, appellants' second and third assignments of error are moot, and we therefore decline to address them.

## IV. CONCLUSION

{¶ 24} For these reasons, we overrule appellants' first assignment of error. Having found the appellants do not have standing, we find appellants' second and third assignments of error are moot and decline to address them. We affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

MENTEL, P.J., and JAMISON, J., concur.